**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

| | |
|---|---|
| BENJAMIN D. TARVER, ) | Case No. |
| ) | |
| Plaintiff, ) | 6:26-cv-01354-AGM-DCI |
| ) | |
| v. ) | |
| ) | |
| BANK OF AMERICA N.A., ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |
| ) | |
| ) | |

## FIRST AMENDED COMPLAINT

Plaintiff, BENJAMIN D. TARVER ("Plaintiff"), sues Defendant BANK OF

AMERICA, N.A. ("Defendant"), and alleges as follows:

## INTRODUCTION

1. This is a focused consumer-protection action arising from Defendant's failure to

follow mandatory error-resolution procedures under the Electronic Fund

Transfer Act ("EFTA"), 15 U.S.C. § 1693 et seq., and Regulation E, 12 C.F.R.

Part 1005, and from Defendant's separate failure to comply with the Fair Credit

-1-

Reporting Act ("FCRA") certification requirement governing procurement of Plaintiff's consumer report.

2. The EFTA claim does not ask the Court at the pleading stage to decide whether the ATM physically dispensed the disputed cash. Plaintiff alleges that he reported through Defendant's online dispute system that the ATM did not dispense the disputed cash; Defendant accepted and processed that notice, opened a claim, issued provisional credit, investigated, denied the claim, and later debited the provisional credit. The claim concerns the procedures Defendant was required to follow after doing so.

3. Plaintiff alleges multiple distinct Regulation E failures, including failure to provide the required notice after provisional crediting, failure to provide an adequate written explanation of findings, failure to provide the mandatory five-business-day protection notice when provisional credit was debited, and failure to conduct a reasonable investigation of the specific error reported.

4. Plaintiff also alleges a separate FCRA claim arising from a Bank of America regular inquiry appearing on Plaintiff's TransUnion consumer disclosure as requested on May 6, 2024. Plaintiff alleges, on information and belief, that Defendant failed to make the certification required by 15 U.S.C. §§ 1681b(f)(2) and 1681e(a), or failed to truthfully certify the purpose for which the report was sought and that the report would be used for no other purpose.

## PARTIES

5. Plaintiff Benjamin D. Tarver is a natural person and consumer residing in the State of Florida.

6. Defendant Bank of America, N.A. is a national banking association with its principal place of business at 100 North Tryon Street, Charlotte, North Carolina 28255.

7. Defendant conducts substantial business in Florida and within the Middle District of Florida.

## JURISDICTION AND VENUE

8. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 because this action arises under the EFTA, 15 U.S.C. § 1693 et seq., Regulation E, 12 C.F.R. Part 1005, and the FCRA, 15 U.S.C. § 1681 et seq.

9. This Court has authority to award damages and other relief under 15 U.S.C. §§ 1693f, 1693m, 1681n, and 1681o.

10. Venue is proper in this District under 28 U.S.C. § 1391 because Plaintiff resides in this District, Defendant conducts business in this District, and a substantial part of the events giving rise to the claims occurred in or affected Plaintiff in Orlando, Florida.

-3-

## FACTUAL ALLEGATIONS

### A. ATM Error-Resolution Proceeding

11. Plaintiff maintained a personal consumer checking account with Defendant ending in 5536.

12. The account was used primarily for personal, family, or household purposes and had been open for more than thirty days before the transaction at issue.

13. On April 15, 2026, a $983.50 transaction involving Plaintiff's consumer checking account occurred at a TD Bank ATM in Orlando, Florida.

14. The transaction was an electronic fund transfer covered by the EFTA and Regulation E.

15. On April 23, 2026, Plaintiff used Defendant's online dispute process and alleged that the ATM did not dispense the disputed cash.

16. Plaintiff's online notice identified the account and transaction, stated the date and amount of the alleged error, and stated the reason Plaintiff believed an error had occurred.

17. Defendant understood the asserted error, opened Claim No. 260423537331, and investigated whether the disputed ATM transaction was valid.

18. On or about May 5, 2026, Defendant provisionally credited Plaintiff's account in the amount of $983.50.

19. Plaintiff did not receive, within two business days after the provisional crediting, any oral or written notice identifying both the amount and the date of the provisional credit, as required by 12 C.F.R. § 1005.11(c)(2)(ii).

20. On or about May 7, 2026, Defendant advised Plaintiff that the claim had been submitted to the merchant's bank and remained under review. That communication did not identify both the amount and date of the provisional credit and did not satisfy 12 C.F.R. § 1005.11(c)(2)(ii).

21. Defendant later issued a denial letter dated June 4, 2026. A copy of the letter and the records attached to it are attached as Exhibit A.

22. The denial letter stated that Defendant's research included information provided with the claim, Plaintiff's account history and monthly statements, and, if available, information from the merchant.

23. As the specific reason for denial, Defendant stated only: "TD BANK ORLANDO FL provided documentation showing the transaction is valid, and we've included it for your records."

24. Defendant attached a transaction sheet containing the notation "000/APPROVED" and a separate code sheet defining code "000" as "Approved = (CASH DISPENSED)."

25. The letter did not explain what Defendant found had physically occurred at the ATM, how the transaction code established that the disputed cash was actually delivered to Plaintiff, or why the information reviewed disproved the specific error Plaintiff reported.

26. The attached materials did not explain whether the ATM dispensing mechanism delivered the disputed amount, whether cash was retracted or diverted, whether a dispense exception occurred, or whether other relevant information existed that could distinguish transaction approval from physical delivery of cash.

27. On information and belief, based on the explanation and records Defendant provided, Defendant treated the approval code and transaction notation as conclusive proof of physical cash delivery without reasonably reviewing other relevant information within Defendant's records or within the control of service providers that could help resolve the reported error.

28. The denial letter stated that the $983.50 provisional credit would be removed from Plaintiff's account on June 18, 2026.

29. Defendant removed the provisional credit on or about June 18, 2026, substantially increasing the negative balance in Plaintiff's account.

30. Although the letter identified the date and amount of the debit, it did not notify Plaintiff that Defendant would honor checks, drafts, similar instruments

-6-

payable to third parties, and preauthorized transfers for five business days after notification without charging Plaintiff for an overdraft caused by the debit, as required by 12 C.F.R. § 1005.11(d)(2)(ii).

31. Plaintiff received no separate oral or written communication containing the mandatory five-business-day protection notice.

32. The procedural duties imposed by the EFTA and Regulation E apply independently of whether Defendant ultimately believed that the disputed transaction was valid.

33. Defendant's alleged procedural failures deprived Plaintiff of mandatory information and account protections, increased the negative balance in Plaintiff's account, caused loss of use of funds, and caused financial harm and other damages to be proved at trial.

## B. May 6, 2024 TransUnion Inquiry and Certification

34. On May 2, 2026, Plaintiff obtained a TransUnion consumer disclosure. The disclosure identifies a "Regular Inquiry" by BANK OF AMERICA requested on May 6, 2024, with inquiry type "Individual." Relevant pages of the TransUnion disclosure are attached as Exhibit B.

35. The TransUnion disclosure states that regular inquiries are posted when someone accesses a consumer's credit information and that the presence of an inquiry means the listed company received the consumer's credit information

-7-

on the date specified. The disclosure separately identifies "Account Review Inquiries" as a different category; the May 6, 2024 Bank of America inquiry appears in the Regular Inquiries section, not in the Account Review Inquiries section.

36. The consumer-facing disclosure therefore shows that Defendant obtained Plaintiff's credit information, but it does not disclose the certification Defendant made to TransUnion, the precise purpose Defendant certified, or whether Defendant certified that the information would be used for no other purpose.

37. The certification record and the communications by which Defendant requested Plaintiff's consumer report are matters maintained by Defendant and/or TransUnion and are not ordinarily available to a consumer from the face of a consumer disclosure.

38. Upon information and belief, Defendant failed to make the certification required by 15 U.S.C. § 1681b(f)(2) in accordance with 15 U.S.C. § 1681e(a), made a certification that did not truthfully identify the purpose for which Plaintiff's consumer report was sought, or failed to certify that the information would be used for no other purpose.

39. Plaintiff pleads the certification violation independently of any separate contention regarding permissible purpose. The certification actually made, if

any, and the purpose Defendant communicated to TransUnion are facts particularly within Defendant's and TransUnion's possession and are expected to be established through discovery.

## COUNT I
### VIOLATION OF THE ELECTRONIC FUND TRANSFER ACT AND REGULATION E
### 15 U.S.C. §§ 1693f, 1693m; 12 C.F.R. § 1005.11

40. Plaintiff realleges and incorporates paragraphs 1 through 33 concerning the ATM error-resolution proceeding, but does not incorporate the separate FCRA inquiry allegations except as necessary to establish the parties, jurisdiction, and venue.

41. Plaintiff's checking account was an "account" covered by the EFTA and Regulation E, and the April 15, 2026 ATM transaction was an electronic fund transfer covered by those laws.

42. Plaintiff's April 23, 2026 online notice satisfied 15 U.S.C. § 1693f(a) and 12 C.F.R. § 1005.11(b)(1) because it enabled Defendant to identify Plaintiff and the account, identified the date and amount of the alleged error, and explained that Plaintiff alleged the ATM did not dispense the disputed cash.

43. Defendant's acceptance and processing of the notice, opening of a claim, issuance of provisional credit for the exact disputed amount, and investigation

of whether the ATM transaction was valid further demonstrate that Defendant understood the nature and amount of the asserted error.

44. Defendant violated 12 C.F.R. § 1005.11(c)(2)(ii) by failing to inform Plaintiff within two business days after provisional crediting of both the amount and date of the provisional credit.

45. Defendant violated 15 U.S.C. § 1693f(d) and 12 C.F.R. § 1005.11(d)(1) by failing to provide a written explanation that adequately explained Defendant's findings in relation to the specific error Plaintiff reported. Defendant provided a conclusion and transaction coding, but did not explain the factual or analytical basis for determining that physical cash delivery occurred.

46. Defendant violated 12 C.F.R. § 1005.11(d)(2)(ii) by debiting the provisional credit without notifying Plaintiff of the mandatory five-business-day protection for qualifying checks, drafts, similar instruments, and preauthorized transfers, without overdraft charges resulting from the debit.

47. Defendant violated 15 U.S.C. § 1693f(a) and (c) and 12 C.F.R. § 1005.11(c)(4) by failing to conduct a reasonable investigation and by treating transaction approval coding as dispositive without reasonably determining whether the available relevant information established physical delivery of the disputed cash.

48. Each foregoing failure is alleged as an independent violation of the EFTA and Regulation E and is actionable under 15 U.S.C. § 1693m.

49. Defendant is a sophisticated national financial institution subject to longstanding Regulation E compliance obligations. Plaintiff alleges that the multiple omissions in a single error-resolution proceeding were knowing, intentional, reckless, and not the result of a bona fide error notwithstanding procedures reasonably adapted to avoid such errors.

50. On information and belief, Defendant knowingly and willfully concluded that Plaintiff's account was not in error when that conclusion could not reasonably have been drawn from the evidence Defendant identified and made available in connection with its investigation. Plaintiff seeks treble actual damages to the extent authorized by 15 U.S.C. § 1693f(e)(2).

51. As a direct and proximate result of Defendant's EFTA and Regulation E violations, Plaintiff sustained actual damages and is entitled to statutory damages, treble actual damages where authorized, costs, interest, and other relief permitted by law.

## COUNT II
## VIOLATION OF THE FAIR CREDIT REPORTING ACT
## IMPROPER CERTIFICATION OF CONSUMER REPORT
## 15 U.S.C. §§ 1681b(f)(2), 1681e(a), 1681n, 1681o

52. Plaintiff realleges and incorporates paragraphs 1 through 10 and 34 through 39 concerning the parties, jurisdiction, venue, and the May 6, 2024 TransUnion inquiry. Plaintiff does not incorporate the ATM-specific liability allegations into this Count.

53. Defendant was a "person" and prospective user of a consumer report within the meaning of the FCRA when it requested and obtained Plaintiff's consumer information from TransUnion.

54. Section 1681b(f)(2) prohibits a person from using or obtaining a consumer report unless the prospective user certifies the purposes for which the information is sought in accordance with 15 U.S.C. § 1681e(a). Section 1681e(a) requires prospective users to identify themselves, certify the purposes for which the information is sought, and certify that the information will be used for no other purpose.

55. In *Pinson v. JPMorgan Chase Bank, N.A.*, 942 F.3d 1200, 1213 n.8 (11th Cir. 2019), the Eleventh Circuit explained that compliance with § 1681b(f) requires both an FCRA-authorized purpose and the certification required by § 1681e(a).

-12-

The court stated: "Failing to do either will give rise to liability. A plaintiff need not allege both."

56. The TransUnion disclosure establishes that Defendant obtained Plaintiff's consumer information through a Regular Inquiry on May 6, 2024, and separately categorizes Account Review Inquiries. The certification made in connection with Defendant's request, if any, is not shown on the consumer disclosure and is within Defendant's and TransUnion's possession.

57. Upon information and belief, Defendant failed to make the certification required by § 1681b(f)(2) in accordance with § 1681e(a), made a certification that did not truthfully identify the purpose for which the report was sought, or failed to certify that the information would be used for no other purpose.

58. Plaintiff specifically alleges improper certification as an independent statutory violation under Pinson. Plaintiff does not allege that the mere appearance of an inquiry conclusively proves improper certification. Rather, the inquiry establishes procurement of the consumer information, while the certification records necessary to determine compliance are peculiarly within Defendant's and TransUnion's possession.

59. Defendant's procurement caused Plaintiff's private consumer-report information to be disclosed by TransUnion to Defendant. Plaintiff alleges that obtaining that information without the certification required by the FCRA

invaded Plaintiff's privacy interest in limiting access to his consumer-report information to access conditioned on compliance with the FCRA.

60. Defendant is a sophisticated national bank that routinely requests consumer reports and is familiar with the FCRA's certification requirements. Plaintiff alleges that Defendant's failure to comply was knowing and/or reckless or, alternatively, negligent.

61. To the extent Defendant's noncompliance was willful, Plaintiff seeks actual or statutory damages and punitive damages under 15 U.S.C. § 1681n. To the extent Defendant's noncompliance was negligent, Plaintiff seeks actual damages and costs under 15 U.S.C. § 1681o.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and against Defendant and:

A. Award actual damages under 15 U.S.C. § 1693m(a)(1) and, as applicable, 15 U.S.C. §§ 1681n and 1681o;

B. Award the maximum statutory damages authorized by 15 U.S.C. § 1693m(a)(2)(A) and 15 U.S.C. § 1681n(a)(1)(A), as applicable;

C. Award treble actual damages to the extent authorized by 15 U.S.C. § 1693f(e);

D.  Award punitive damages in such amount as the Court or jury may allow under 15 U.S.C. § 1681n(a)(2);

E.  Award the costs of this action as authorized by applicable law;

F.  Award pre-judgment and post-judgment interest where permitted by law; and

G.  Award all other relief the Court deems just and proper.

## Certification Under Penalty of Perjury That Artificial Intelligence Was Used in the Preparation of This Filing

I have reviewed the Standing Order Requiring Disclosure of the use of artificial intelligence. Artificial intelligence was used in the preparation of this filing in the following way: Artificial intelligence was used to assist with drafting, editing, formatting, grammar review, and organization of this filing. However, under penalty of perjury, I certify that before filing, I personally reviewed Rule 11 of the Federal Rules of Civil Procedure and I personally read every case. I understand that if a case upon which I rely does not exist or does not reasonably stand for the cited proposition, the Court may treat this as a violation of Rule 11 of the Federal Rules of Civil Procedure. I have reviewed Rule 11 of the Federal Rules of Civil Procedure and I understand that this rule applies equally to counsel and unrepresented parties, that as the person signing this filing I am the person who will be held responsible for its contents even if it was prepared by someone else, and I am familiar with the sanctions available for violations of Rule 11. If this certification is made by counsel, I further understand that citation to a case that either does not exist or does not reasonably stand for the cited proposition may be treated as a violation of my oath of candor toward the tribunal and a basis on which my admission to practice in the Middle District of Florida could be revoked or suspended. Further, whether I represent myself or I am an attorney representing a client, I understand that by making this certification under penalty of perjury I could be referred for criminal prosecution if the statements I make here are false.

Respectfully submitted,

BENJAMIN D. TARVER
450 South Orange Ave, 3rd Floor
Orlando, FL  32801
T: 407-308-2968
E: litigation@civilfilings.com

Dated: August 10, 2026

*Plaintiff, Pro Se*

-17-

## CERTIFICATE OF SERVICE

I hereby certify that on August 10, 2026, I served a true and correct copy of the foregoing document by U.S. Mail, postage prepaid, on counsel of record for Defendant at the following address:

Marc Thomas Parrino
Liebler, Gonzalez & Portuondo, PA
44 W Flagler St Ste 2500
Miami, FL 33130-1808

I further certify that, upon docketing by the Clerk, counsel of record who are registered users of the Court's CM/ECF system may receive electronic notice of this filing through CM/ECF.

_____
BENJAMIN D. TARVER
*Plaintiff, Pro Se*